ELIZABETH SHEA, Plaintiff-Appellant, v. PRESERVATION CHICAGO, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—89—1958

Opinion filed November 15, 1990.—Rehearing denied January 7, 1991.

Matthew J. Morrissey, of Magiera & Morrissey, P.C., of Chicago, for appellant.

Orner & Wasserman, Ltd., of Chicago (Norton Wasserman and Mary A. Mazurk, of counsel), for appellees Preservation Chicago, Inc., Lawrence Stein, and Richard M. Holtzman.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Elizabeth Shea (plaintiff) appeals from the trial court's dismissal with prejudice (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) of her negligence, breach of contract, and consumer fraud claims against her landlord and its leasing agents (hereinafter collectively referred to as defendants). Plaintiff's complaint alleged in pertinent part that she was injured when a third person unlawfully entered the apartment building and criminally assaulted her. Her pleading claimed that these injuries were proximately caused by defendants' failure to repair and maintain an interior security door and a safety lock on this door.

We conclude that, under the circumstances of this case, plaintiff's complaint alleged sufficient facts to demonstrate that defendants owed plaintiff a duty to protect her from reasonably foreseeable third-party criminal attacks. Accordingly, we reverse the dismissal of plaintiff's negligence claim and remand this count for further proceedings consistent herewith. We also determine that plaintiff's complaint did not allege sufficient facts to show that defendants breached an oral or written contract to protect plaintiff from third-party attacks, and that plaintiff's pleading did not allege sufficient facts to indicate that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 et seq.). As a result, we affirm the trial court's dismissal of plaintiff's breach of contract and consumer fraud claims.

The following factual allegations in plaintiff's complaint are accepted as true for the purpose of reviewing the trial court's dismissal of the pleadings pursuant to section 2—615. (See Krasinski v. United Parcel Service (1988), 124 Ill. 2d 483, 485-86, 530 N.E.2d 468.) On June 8, 1986, plaintiff and defendants executed a written document leasing an apartment to plaintiff in a building located on the north side of the City of Chicago. Under the lease agreement, plaintiff's rental of the apartment ran from June 15, 1986, to September 30, 1987. When plaintiff signed the lease, defendants represented to plaintiff that an interior security door, and the safety lock on this door, were in a defective and inoperable condition, but that defendants would repair and maintain the security door and safety lock in safe condition for the term of the lease. Defendants attempted to repair the interior security door and safety lock on several occasions

during the months of June and July, but were negligent in these attempts and did not return the door or the lock to good operating condition. Because of defendants' negligence in failing to repair the interior security door and safety lock, an intruder gained access to the apartment building and assaulted the plaintiff on July 18, 1986, causing her severe and permanent injury.

Plaintiff filed suit against defendants alleging that their failure to properly repair and maintain the interior security door and safety lock proximately caused her injuries. As ultimately amended, plaintiff's complaint contained claims for negligence (count I), breach of contract (count II), and consumer fraud (count III). The trial court dismissed plaintiff's complaint for failure to state claims for which relief could be granted (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), and plaintiff appeals.

In support of the trial court's dismissal of plaintiff's complaint, defendants contend that they had no duty to protect plaintiff against criminal attacks in the instant cause. Defendants also argue that dismissal of plaintiff's negligence count was appropriate because plaintiff did not allege that prior criminal conduct occurred in the building which would have put defendants on notice that their failure to exercise due care would create a dangerous condition on the premises. Defendants urge that *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358, and *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433, relied upon by plaintiff in support of her negligence claim, are factually distinguishable from the case at bar. Defendants also note that in *Rowe* and *Duncavage* there had been previous incidents of violent criminal activity and assert that these decisions reaffirm a "prior incidents" requirement.

Plaintiff argues that there can be landlord liability when either (1) prior criminal conduct has occurred in the building, or (2) the landlord's actions materially increase the risk of criminal activity although there have been no prior, similar criminal attacks on the premises. To support this argument, plaintiff relies primarily upon *Duncavage* and *Rowe*. Plaintiff argues upon review that her negligence claim was factually sufficient and did not require an allegation that a prior, similar criminal attack had befallen another tenant in defendants' apartment building.

At issue in plaintiff's negligence count is whether the allegations in plaintiff's complaint establish the existence of a duty of care. The existence of such a duty of care is a question of law. By dismissing plaintiff's complaint, the trial court determined that plaintiff failed to allege any set of facts from which a legal duty upon defendants can be inferred.

In *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358, the Illinois Supreme Court held that a landlord has no *general* duty to provide protection to tenants against foreseeable third-party criminal attacks. (125 Ill. 2d at 216.) Rather, the proper question is whether a particular landlord, under the facts of each case, assumed a duty to do so. (125 Ill. 2d at 217.) Where the landlord has retained or exercised control over a portion of the premises, the landlord has assumed a duty to exercise such control in a reasonably safe manner. (125 Ill. 2d at 217-20; see also *Lamkin v. Towner* (1990), 138 Ill. 2d 510.) Whether this retention of control includes a duty to protect tenants against foreseeable third-party criminal attacks depends upon the normal and usual function of such control and the particular circumstances of the case. *Rowe*, 125 Ill. 2d at 217-20.

The supreme court determined that, under the facts of *Rowe*, the landlord's provision of exterior lighting to common areas did not amount to the assumption of a duty to protect tenants from third-party attacks, since lighting is commonplace and provided by virtually all landlords to all tenants. (125 Ill. 2d at 218.) However, the landlord's retention of access to individual units, and the manufacture and control of master keys to gain such access, constituted a voluntary assumption by the landlord to protect tenants from reasonably foreseeable third-party criminal attacks. This voluntary assumption of a duty by a landlord to protect tenants imposed upon the landlord the legal duty to take reasonable precautions to prevent unauthorized entries by third parties. (125 Ill. 2d at 221.) Because the landlord was aware that master keys were outstanding and unaccounted for, the landlord was obligated to take reasonable precautions to protect tenants from foreseeable unauthorized entries with such keys. The landlord was in the best position to guard against such unauthorized entry. (125 Ill. 2d at 222-23.) Because the record showed that the landlord took no reasonable precautions to prevent foreseeable unauthorized entries, the supreme court concluded that the landlord breached his duty of due care and was liable for the reasonably foreseeable criminal acts of third persons which were proximately caused by the landlord's negligence. 125 Ill. 2d at 223.

We find it significant that the Illinois Supreme Court in *Rowe* cited with approval *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433, *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47, and *Mims v. New York Life Insurance Co.* (1971), 133 Ill. App. 2d 283, 273 N.E.2d 186, with respect to a landlord's liability for third-party criminal acts based on the landlord's failure to exercise due care for portions of the premises over

which the landlord retained control. In *Duncavage*, the defendant landlord permitted weeds to become overgrown, exterior lighting and apartment windows to fall into disrepair, and stored a ladder near the plaintiff tenant's apartment window. The ladder had been previously used by an intruder to gain access to and burglarize the apartment. The landlord was aware of the burglary, but made no effort to improve the condition of the premises. The plaintiff tenant was attacked and killed by an intruder who gained access to the same apartment by using the same ladder as had been employed in the previous burglary. In *Stribling*, the plaintiffs were tenants whose apartment was repeatedly burglarized when thieves broke through the adjacent wall of a vacant apartment. The defendant landlord knew of prior instances where the tenants had been burglarized in the same manner, but did not secure the vacant apartment. In *Mims*, the plaintiff tenant's apartment was burglarized when the defendant landlord failed to close and lock a door to the tenant's apartment during the landlord's routine inspection of the tenant's apartment.

In all of these cases, as in *Rowe*, the landlord retained control over or access to a portion of the premises. The landlords were aware, or should have been aware, of the risks of harm or danger created by their failure to exercise due care in their retained control over or access to the premises. Also, in each of the cases, the landlords were in the best position to guard against criminal activity arising from the landlords' failure to exercise reasonable care in their control over or access to the premises in order to guard against reasonably foreseeable criminal acts. By retaining access to or control over the property under these circumstances, the landlords had assumed a duty to exercise reasonable care in order to protect tenants from reasonably foreseeable third-party criminal attacks. However, the landlords failed to take precautions to prevent reasonably foreseeable criminal activities. Consequently, the landlords were held liable to tenants injured by third parties who gained entrance to the premises as a result of the landlords' failure to properly exercise their retained control over or access to the premises.

■■ Bearing in mind this precedent, we turn to plaintiff's argument that there are two separate grounds for landlord liability for third-party criminal attacks upon tenants. We recognize that some Illinois Appellate Court decisions have appeared to analyze a landlord's potential liability according to the separate and independent theories of (1) a general duty to protect tenants from third-party criminal attacks in certain circumstances and (2) a voluntarily assumed duty to protect tenants from third-party criminal attacks. (See, *e.g., Pe-*

*trauskas v. Wexenthaller Realty Management, Inc.* (1989), 186 Ill. App. 3d 820, 542 N.E.2d 902; *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433.) In light of the supreme court's decision in *Rowe*, we do not believe that these two apparent separate and independent bases for potential landlord liability reflect Illinois precedent. As *Rowe* indicates, a landlord has no *general* duty to protect tenants from third-party criminal attacks. The proper inquiry is to determine whether, on a case-by-case basis, a particular landlord has retained control over or access to a portion of the property, and whether the circumstances demonstrate that the landlord, by retaining access to or control over the premises, assumed a duty to protect tenants against reasonably foreseeable third-party criminal attacks. Based upon this reasoning, we decline to adopt plaintiff's suggestion of two separate and independent bases for potential landlord liability for third-party criminal attacks.

■ We also disagree with defendants' argument that Illinois law requires, in all instances, that prior incidents of the same criminal activity must have occurred prior to the plaintiff tenant's attack in order to find that the defendant landlord voluntarily assumed a duty to protect tenants from third-party criminal attacks. Although prior incidents are a factor in several cases in which the landlord has been held liable for a third-party criminal attack upon a tenant, we do not believe that prior incidents of the same criminal activity are a *per se* requirement in all cases. For example, in *Mims*, cited with approval by the supreme court in *Rowe*, there had not been any prior incidents of criminal activity in the building.

In our view, the proper inquiry is to consider all relevant circumstances in order to determine whether the landlord had assumed a duty, under the facts of each particular case, to protect a tenant from reasonably foreseeable third-party criminal attacks. A rigid application of a "prior incidents" rule "has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. *** Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. *** Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property." *Isaacs v. Huntington Memorial Hospital* (1985), 38 Cal. 3d 112, 125-26, 211 Cal. Rptr. 356, 361, 695 P.2d 653, 658; see also *Small v. McKennan Hospital* (S.D. 1989), 437 N.W.2d 194, 201 ("violent criminal activity can be foreseeable simply upon common experience").

■ Turning to the facts of the instant cause, we conclude that plaintiff's negligence count was sufficient to state a claim for which

relief may be granted. Generally, "[w]hether a duty exists depends on a consideration of the likelihood of injury, the magnitude of the burden to guard against it, and the consequences of placing that burden upon the defendant. [Citation.]" (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 228, 531 N.E.2d 1358.) Plaintiff alleged that the defendants' negligent failure to repair and maintain the interior security door and safety lock permitted the unauthorized entry of an intruder onto the premises, and that this intruder assaulted plaintiff in the apartment building. The allegations of plaintiff's complaint indicate that defendants knew that the interior security door and safety lock were broken, as they had attempted to repair the equipment on several occasions.

In our view, a reasonable person in defendants' position would have been aware of the risks of unauthorized entry, and resulting criminal attacks by third persons, posed by an inoperable interior security door and safety lock. Similar to master and grandmaster keys, the normal and usual purpose of an interior security door and safety lock is to prevent entry by intruders. There is nothing in the record to suggest that interior security doors and safety locks are commonly provided by landlords in most apartment buildings. In addition, the record does not demonstrate that the cost of repairing the interior security door and safety lock was prohibitive, given the risks of injuries arising from its malfunction. As landlord, the defendants were in the best position to guard against these risks arising from the disrepair of the internal security door and safety lock. In light of all of these considerations, we hold that plaintiff's allegations were sufficient to show that the defendants assumed a duty to protect plaintiff against reasonably foreseeable third-party criminal attacks proximately caused by the defendants' failure to repair and maintain the interior security door and safety lock.

The cases upon which defendants rely do not conflict with our holding. In *Martin v. Usher* (1977), 55 Ill. App. 3d 409, 371 N.E.2d 69, and *Beck v. Rossi Brothers* (1984), 125 Ill. App. 3d 874, 466 N.E.2d 1124, the landlords were found not liable although the landlords had failed to ensure that entrance door locks in the common areas of the apartment building were functioning properly. Entrance door locks are commonplace and are routinely provided by landlords in most apartment buildings. As a result, these decisions are distinguishable from the case at bar. The equipment in the present case is an interior security door and safety lock, not an entrance door as was at issue in *Martin* and *Beck*. (See also *B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5 (gate to shopping mall parking lot under construction); *N.W. v. Amalgamated Trust & Savings Bank* (1990), 196 Ill.

App. 3d 1066, 554 N.E.2d 629 (entrance doors); *Petrauskas v. Wexenthaller Realty Management, Inc.* (1989), 186 Ill. App. 3d 820, 542 N.E.2d 902 (fire escape doors and hallway lights).) The case of *Carrigan v. New World Enterprises, Ltd.* (1983), 112 Ill. App. 3d 970, 446 N.E.2d 265, upon which defendants rely, is also distinguishable. *Carrigan* pertained to the landlord's provision of a burglar alarm, which, unlike an interior security door and safety lock, serves to alert tenants to unauthorized entry rather than to prevent such unauthorized entry. Nor does the case at bar involve a large expanse of land and buildings, such as a shopping mall or a university, where the cost of more extensive security measures may have been prohibitive to the landowner. See, *e.g., Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 514 N.E.2d 552 (university campus); *Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 428 N.E.2d 662 (shopping mall parking lot); *Figueroa v. Evangelical Covenant Church* (7th Cir. 1989), 879 F.2d 1427 (university campus, including parking lot).

Defendants also argue that plaintiff's complaint fails to allege that her injuries were proximately caused by the defendants' failure to properly maintain the interior security door and safety lock. Specifically, defendants assert that plaintiff's complaint is deficient because it does not explicitly allege that the intruder who attacked plaintiff gained access to the apartment building through the interior security door which defendants had allegedly failed to repair. The record shows that plaintiff alleges in her amended complaint that the defendants permitted the interior security door and the safety lock on the interior security door to remain in an inoperable and defective condition. Plaintiff further alleged that as a direct and proximate result of this negligence, an intruder gained entry to the premises and assaulted plaintiff. In our view, it is reasonable to infer from these allegations that the intruder who assaulted plaintiff gained access to the apartment building through the inoperable security door and safety lock. Consequently, we cannot say on this record that plaintiff's negligence count is factually insufficient with respect to its allegations of proximate cause. The decision upon which defendants rely with respect to this argument is factually distinguishable from the case at bar. *Carrigan v. New World Enterprises,* 112 Ill. App. 3d 970, 446 N.E.2d 265 (whether burglar alarm would have caused assailant to flee was matter of speculation and conjecture).

For these reasons, we reverse the trial court's dismissal of count I of plaintiff's complaint and remand the matter for further proceedings consistent herewith.

Plaintiff also appeals from the trial court's dismissal of her breach

of contract claim (count II). In this count, plaintiff alleged that defendants' failure to repair and maintain the interior security door and safety lock constituted (1) a breach of the written lease agreement between plaintiff and defendants to the effect that defendants would repair and maintain the premises in good and safe condition, and (2) a breach of the oral agreement between plaintiff and defendants to the effect that defendants would repair the interior security door and safety lock prior to the commencement of plaintiff's tenancy.

The written lease agreement executed by plaintiff and defendants, attached to plaintiff's complaint, provides in pertinent part that the defendants shall maintain "[b]uilding, grounds and areas under the control of the Lessor in clean, sanitary and safe condition free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin." Based on this provision, plaintiff asserts that defendants had an obligation, under the lease, to repair and maintain the interior security door and safety lock in order to protect plaintiff from third-party criminal attacks. We disagree.

■ It is well established that terms of a contract are to be given their plain and ordinary meaning in order to determine the parties' intentions. (See, *e.g.*, *IK Corp. v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 810-15, 558 N.E.2d 161.) We do not believe that the term "safe condition" in the instant lease provision encompasses safety from third-party criminal attacks. In the context of the relevant provision, the term "safe condition" obligates the landlord to repair and maintain the premises so that a condition on the premises does not cause injury to tenants. As a result, the written lease between plaintiff and defendants did not obligate defendants to repair and maintain the interior security door and safety lock in order to protect plaintiff from third-party criminal attacks.

Plaintiff also asserts that defendants breached an oral agreement to repair and maintain the interior security door and safety lock. Specifically, plaintiff alleged that defendants represented to plaintiff, when the lease was executed by plaintiff, that defendants would return the interior security door and safety lock to good operating condition before her tenancy would begin. However, the written lease agreement specifically states that the "terms and conditions contained herein shall be conclusively deemed the agreement" between the parties and that "no modifications, waiver or amendment of this Lease or any of its terms, conditions, or covenants shall be binding upon the parties unless made in writing and signed by the parties sought to be bound." The lease agreement also provides that the tenant "has inspected the apartment, the Building and all related areas and grounds

and that Tenant is satisfied with the physical condition thereof." The lease agreement further states that "[t]enant agrees that no representations, warranties (expressed or implied) or covenants with respect to the condition, maintenance, or improvements of the apartment building or other areas have been made to tenant except those contained in this lease, the application, or otherwise in writing signed by lessor."

■■ ■ It is well recognized in Illinois that "if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parol evidence cannot be admitted to add another term to the agreement. [Citation.]" (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63, 418 N.E.2d 431; see also *Koester v. Weber, Cohn & Riley, Inc.* (1989), 193 Ill. App. 3d 1045, 1049, 550 N.E.2d 1004.) Because the lease agreement between plaintiff and defendants specifically provides that it is the complete agreement between the parties with respect to the condition of the premises and with respect to the defendants' contractual duty to repair and maintain the premises, plaintiff cannot state a claim for breach of an oral agreement made contemporaneously with plaintiff's execution of the written lease.

For these reasons, we affirm the trial court's dismissal of count II of plaintiff's amended complaint. In view of this disposition, we do not address the parties' remaining arguments regarding count II.

Plaintiff also seeks review of the trial court's dismissal of her consumer fraud claim (count III). In this count of her complaint, plaintiff alleged that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) (hereinafter the Consumer Fraud Act) when they misrepresented to plaintiff that the interior security door and safety lock would be repaired to good operating condition before the plaintiff's tenancy began on June 15, 1986. Plaintiff alleged that defendants made this misrepresentation to her when she executed the lease on June 8, 1986.

The Consumer Fraud Act states that it is unlawful to engage in "deceptive acts *** , including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) Although a claim under the Consumer Fraud Act differs from a common law fraud action, a consumer fraud claim "must be pleaded with the same specificity that has always been a prerequisite to an action for common law fraud. [Citation.]" *Spengler v. V&R Marathon, Inc.* (1987), 162 Ill. App. 3d 715, 717-18, 516 N.E.2d 787.

■ Plaintiff's consumer fraud claim in the case at bar is not sufficiently specific to state a claim under the Consumer Fraud Act. Plaintiff does not allege that defendants knew on June 8, 1986, or that defendants should have known on this date, that it would not be possible or feasible to repair the interior security door and safety lock by June 15. Absent such an allegation, we cannot find plaintiff's consumer fraud count sufficient to state a claim for which relief may be granted. As a result, we affirm the trial court's dismissal of count III of plaintiff's complaint. In light of this disposition, we do not address the parties' remaining arguments regarding count III.

For the reasons stated, we affirm the trial court's dismissal of plaintiff's breach of contract (count II) and consumer fraud (count III) claims, but reverse the trial court's dismissal of plaintiff's negligence (count I) claim and remand this matter for further proceedings.

Affirmed in part; reversed in part and remanded.

JIGANTI and LINN, JJ., concur.