ALI SAMEER, Plaintiff-Appellant, v. TAHIR BUTT, Defendant (Aragon Ballroom *et al.*, Defendants-Appellees).

First District (5th Division) No. 1—01—3714

Opinion filed June 27, 2003.—Rehearing denied September 25, 2003.

Law Office of David J. Heyer, of Chicago (Mark S. Schwartz, of counsel), for appellant.

Williams, Montgomery & John, Ltd. (Alyssa M. Campbell, Edward O. Pacer, and Lloyd E. Williams, of counsel), and Law Offices of Mark R. Rudoff (John F. Pacocha and Mark R. Rudoff, of counsel), both of Chicago, for appellees.

JUSTICE QUINN delivered the opinion of the court:

In the instant case, the trial court granted a motion for summary judgment in favor of defendants, Aragon Ballroom (Aragon) and Luna Security Services (Luna Security), finding that defendants owed plaintiff, Ali Sameer, no duty of care with regard to a third party's unforeseeable criminal attack. Plaintiff now appeals.

On appeal, plaintiff argues that: (1) the trial court erred in finding that the criminal attack on plaintiff was unforeseeable; (2) the trial court erred in granting summary judgment where the facts were sufficient to find that Aragon owed plaintiff a duty to protect him from a third party's criminal act under the Restatement (Second) of Torts section 344 (1965); (3) the trial court erred in granting summary judgment where, by hiring Luna Security to provide security services for the concert, Aragon owed plaintiff a duty to protect him from injury;

(4) the trial court erred in granting summary judgment as the evidence raised an issue of material fact as to whether Luna Security's failure to pat down patrons as they entered the concert created a condition conducive to a foreseeable intervening criminal act; and (5) the trial court, as a matter of public policy, should have imposed a burden on the defendants to protect the plaintiff from a third party's criminal attack. Based on the following reasons, we affirm the trial court's summary judgment order.

## BACKGROUND

On November 29, 1997, there was a concert/dance held in the Aragon Ballroom to celebrate Pakistan's fiftieth year of independence. Shortly after the concert, one concertgoer, Waseem Khalil (Khalil), was stabbed on the sidewalk in front of the Aragon. A second concertgoer, Ali Sameer (plaintiff), was stabbed in the Aragon's vestibule.

A brief description of the Aragon Ballroom's configuration would help to understand the chain of events that led to the stabbing. One has to enter the Aragon through one of three sets of glass doors. Once inside the glass doors, there is a vestibule where the ticket counter is located. Beyond the ticket counter, there is a set of wooden doors with glass panes on the top. Beyond the wooden doors is a lobby. At the end of the lobby are two stairways that lead up to the ballroom where the concert was held.

At 10 p.m. that evening, plaintiff and his friends went to the concert. They were not searched or patted down at the Aragon's entrance. The crowd in the concert included all age groups and families. The concert's atmosphere was calm and the crowd well-behaved.

Khalil was at the concert with four friends (Nasir and Azfar Saeed, Shahbaz Irshad and Khalid Ghaffer). Khalil testified in a deposition that as they entered the concert they were not patted down by security personnel. Khalil further testified that as the last song was being played, a girl, speaking Urdu (Pakistani language), offered to give Khalil her telephone number. At this time, the man who was dancing with the girl, Mohammed I. Choudhry, came up and said he would give her telephone number to Khalil, and he punched Khalil in the face. Choudhry did not shout or yell at Khalil before punching him. After being punched, Khalil yelled for help in English, while three or four men dragged him across the lobby, through the foyer and out onto the sidewalk in front of the Aragon.

Outside the Aragon, several men started beating Khalil. During the beating, as Khalil tried to get up from the ground, one of the assailants, Butt, stabbed Khalil. The knife had a six- to seven-inch-long

blade. Khalil estimated that he was outside the Aragon for about a minute when he was stabbed. Khalil testified that after the stabbing, Butt left the scene in a white Humvee that was double-parked in front of the Aragon. Khalil recognized Butt as a fellow cab driver whom he had seen before. Khalil had seen Butt dancing in the ballroom earlier that night.

Plaintiff left as the last song of the concert was being played. He did not notice any commotion or hear any argument. As he walked down from the main ballroom into the lobby, plaintiff saw that three security guards were stationed on each stairway. The security guards were wearing orange vests and asking people to leave.

As plaintiff came to the glass door, he saw a commotion outside on the sidewalk. Plaintiff testified he did not see any security guards in the vestibule. As he was walking out of the glass door, he was hit very hard from behind. Defendant conceded, for purposes of the motion for summary judgment and for this appeal, that plaintiff was stabbed while he was inside the foyer. After being hit, plaintiff then turned around and saw Butt standing behind him with a knife in his hand. Plaintiff said the knife had a six- to seven-inch-long blade. Seeing the knife, plaintiff ran and Butt gave chase. As plaintiff was running, he looked back and saw Butt was chasing him, swinging the knife and trying to stab him. Plaintiff escaped by outrunning Butt. Plaintiff also saw Butt leave in a white Humvee that was parked in front of the Aragon. Plaintiff was later taken to the hospital by his friends. As a result of the stabbing, plaintiff was hospitalized for 23 days. He had two surgeries and an infection developed thereafter.

Plaintiff testified that he did not know Butt, nor did he know why Butt stabbed him. In a deposition, plaintiff testified that the concert crowd was warm and amicable. He was not involved in any confrontation with anybody during the concert. Plaintiff testified that the whole incident took place in about two minutes. He had no warning throughout the night that this would happen to him at the end of the concert.

Azfar Saeed (Azfar) went to the concert with Khalil. Azfar testified in a deposition that toward the end of the concert, he saw that Khalil and Shabaz Irshad were talking to somebody. Azfar then saw someone grab Khalil by the collar and take Khalil outside of the Aragon, dragging him for 10 to 20 feet. Once outside, several men started beating Khalil. Azfar did not see Khalil resist. However, Azfar was not sure how many men were dragging Khalil out of the foyer because the lobby was crowded with people leaving the concert. He tried to scream to get help for Khalil. Azfar did not see any security personnel in the vestibule.

In a deposition, Khalil's friend Shahbaz Irshad (Irshad) corroborated that a girl offered to give her telephone number to Khalil. Choudhry then punched Khalil in the face. Irshad saw one man grab Khalil by the collar and walk Khalil out of the Aragon. Khalil appeared to be both going out willingly and also being pushed along. Irshad did not seek help because he did not believe there would be any trouble.

As Irshad got out on the sidewalk, a fight broke out. Khalil and Irshad were attacked by several men. Irshad ran away and hid behind some cars. Irshad later came back and saw those same men beating Khalil, and then someone stabbed Khalil in the chest.

Michael Tannehill (Tannehill), an off-duty police officer, worked as a part-time security officer for Luna Security that night to provide security services in the Aragon. Tannehill testified that if a fight broke out, the security officers were to step in and resolve the conflict. Tannehill also testified that the security people were all in the main lobby area because their security duties did not include the foyer. Tannehill testified that, as a police officer, he would take action if fighting took place in the vestibule or outside the Aragon.

At the end of the concert, Tannehill was upstairs at the concession stand. He did not go downstairs until the building was clear. Tannehill testified that when he came back from his lunch break, he saw a white Humvee double-parked in front of the Aragon. Tannehill said he believed that two Middle Eastern men in the white Humvee were involved in the stabbing incidents in front of the Aragon.

Edward Soto, the president of Luna Security, testified in a deposition that the Aragon routinely contracted with Luna Security to provide security services for the ballroom's events. On the evening in question, Luna Security stationed ushers by the stairs and fire exits and security personnel were placed inside the main hall. Luna Security also placed two uniformed female security personnel inside the second set of doors. Neither woman reported any trouble at the concert. Soto also testified that Luna was not responsible for security duties in the vestibule.

Albert Miranda (Miranda), general manager of the Aragon, testified in a deposition that the Aragon would contract with Luna to provide security services for events. Luna Security would assign positions for its security personnel. However, there was no written security plan for the night of the event. Miranda also testified that a concert/dance event would require a pat-down search as concertgoers entered the event. Any weapon found in the pat-down would be confiscated.

In November 1999, Khalil filed suit against Tahir Butt, Mohammed Choudhry, Aragon, Luna Security and Mohammed Irdis, d/b/a

Pak Sarzameen Talk Show, and Indo-Pak Video, Inc., d/b/a Video Palace, as the co-sponsors of the concert.

Separately, in December 1999, plaintiff also filed suit against Tahir Butt, Aragon, Luna Security, Mohammed Irdis, d/b/a Pak Sarzameen Talk Show, and Mohammed I. Choudhry, individually, and as an agent of Indo-Pak, Inc.(the concert promoter).

Khalil's and plaintiff's suits were subsequently merged. On July 11, 2001, Indo-Pak and Irdis each filed a motion for summary judgment; both motions were granted. No appeal was taken therefrom. On July 24, 2001, the trial court granted a motion for summary judgment as to both Aragon and Luna Security. The trial court found the assault on plaintiff was not reasonably foreseeable; thus, neither defendant owed a duty to plaintiff. Plaintiff then voluntarily nonsuited his complaint against Butt. Plaintiff now appeals the order granting summary judgment for Aragon and Luna Security.

## ANALYSIS

■ The standard of review for a trial court's decision on a motion for summary judgment is *de novo*. See *Doe v. Goff*, 306 Ill. App. 3d 1131, 1134 (1999).

## DUTY

■ Summary judgment is proper if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). The purpose of summary judgment is not to try a question of fact, but simply to determine whether a genuine issue of triable fact exists. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203 (1996). It is well established that in determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Schmitt*, 172 Ill. 2d at 203. In addition, any evidence that would be inadmissible at trial cannot be considered by the court in support of or in opposition to the motion for summary judgment. *Schmitt*, 172 Ill. 2d at 203-04.

■ In order to recover in an action for negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury to the plaintiff proximately caused by the breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). The question of the existence of a duty is a question of law, and in determining whether a duty exists, the trial court considers whether a relationship existed between the parties that imposed a legal obligation upon one party for the benefit of the other party. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 215 (1988).

■ In general, a landowner has no duty to protect persons on his property from the criminal activity of third parties. *Gill v. Chicago Park District*, 85 Ill. App. 3d 903, 905 (1980). However, an exception to this rule exists when (1) a special relationship exists between the injured party and the property owner, and (2) the criminal attack was reasonably foreseeable. *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 147 (2000).

■ Illinois law recognizes four special relationships that will impose upon a property/business owner a legal duty to warn or protect a person from harm, *i.e.*, (1) carrier-passenger; (2) innkeeper-guest; (3) business inviter/invitee; and (4) one who voluntarily takes custody of another in such a manner that it deprives the person of his normal opportunities for protection. *Lutz v. Goodlife Entertainment, Inc.*, 208 Ill. App. 3d 565, 569 (1990). A person is a business invitee on the land of another if (1) the person enters by express or implied invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner on the land; and (3) the owner receives a benefit. *Leonardi v. Bradley University*, 253 Ill. App. 3d 685, 690 (1993).

In this case, the defendants have conceded for purposes of their motions for summary judgment that the Aragon and plaintiff had a business inviter/invitee relationship.

We will next examine whether the incident was reasonably foreseeable to the defendants.

## REASONABLE FORESEEABILITY

■ Illinois courts have consistently held that even if a "special relationship" exists, as it does here, no duty to protect against criminal acts will be imposed unless the incident should reasonably have been foreseen by the landowner. *Rowe*, 125 Ill. 2d at 215-16. Anyone " 'can foresee the commission of a crime virtually anywhere and at any time.' " *Bence v. Crawford Savings & Loan Ass'n*, 80 Ill. App. 3d 491, 495 (1980), quoting *Goldberg v. Housing Authority*, 38 N.J. 578, 583, 186 A.2d 291, 293 (1962). " 'The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.' " (Emphasis omitted.) *Bence*, 80 Ill. App. 3d at 495, quoting *Goldberg v. Housing Authority*, 38 N.J. at 583, 186 A.2d at 293.

On appeal, plaintiff argues that the stabbing was reasonably foreseeable because the same assailant had stabbed Khalil minutes earlier. Plaintiff cites to *Shortall v. Hawkeye's Bar & Grill*, 283 Ill.

App. 3d 439 (1996), and *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141 (2000), to support his argument.

In this case, Aragon produced evidence that no incident similar to this had occurred for the last five years. On the night in question, plaintiff and Khalil were both stabbed by the same assailant within a very short period of time as the crowd was leaving the concert. The only evidence in the record that could support a finding that the defendants had knowledge of either stabbing is Khalil's statement that, as he was being dragged out of the Aragon, there were two or three security guards in the lobby. It is undisputed that no security personnel were stationed in the foyer. No evidence was presented that either Aragon or Luna Security was aware of the incident unfolding on the sidewalk. Consequently, contrary to plaintiff's assertion, this case is not governed by the decisions in *Shortall v. Hawkeye's Bar & Grill*, 283 Ill. App. 3d 439 (1996), and *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141 (2000).

In *Shortall*, this court determined that the defendant tavern owner had a duty to protect the plaintiff from injuries sustained in a fight that took place immediately outside the tavern. In so ruling, this court specifically noted that the tavern owner contributed to and escalated the altercation by sending patrons out into it after the dispute began in the bar. In addition, we noted that the brawl occurred just outside the front door and continued for 15 minutes while the owner's employee watched through a window. No one called the police, and none of the bouncers attempted to stop the fight. *Shortall*, 283 Ill. App. 3d at 444-45.

In *Osborne*, defendant's bouncers had set up barricades on the sidewalk to control the crowd lining up to get into the bar. Eight or nine of the defendant's bouncers got into an altercation with the assailant and his friend. After a lengthy fight, the bouncers forced the two intoxicated men outside the tavern. The expelled patrons tried to get back into the bar by pounding on the door. The bouncers locked the door and ignored them. At the time plaintiff left the bar from the door that was locked, one of the expelled patrons felt a push behind him. Thinking it was the bouncers, he " 'did a spinning heel kick' " and struck the plaintiff. *Osborne*, 312 Ill. App. 3d at 144. In reversing the trial court's directed verdict for the defendant, the appellate court reasoned that the defendant, knowing the expelled patrons were intoxicated, combative and angry, "exported" the problem to the sidewalk. The court held that, based on the bouncers' knowledge, it was reasonably foreseeable that allowing patrons to leave through the locked door into the path of the potentially dangerous men would lead to the patrons being attacked. *Osborne*, 312 Ill. App. 3d at 149.

The decisions in *Shortall* and *Osborne* were predicated upon facts that are drastically different from those in the instant case. In this case, plaintiff testified that the crowd in the concert was calm and well-behaved. There were no disturbances until he began to leave the Aragon. Plaintiff further testified that, while in the theater, he did not see any fighting or hear any yelling inside the ballroom, in the lobby, or in the foyer. As plaintiff was walking out the glass doors, he then saw a commotion outside on the sidewalk. Finally, plaintiff was stabbed from behind without any warning and for no obvious reason. Plaintiff did not know the assailant.

■ Unlike *Shortall* and *Osborne*, in this case, the defendants had no knowledge of Khalil's incident. Defendants did not "export" the fight out to the sidewalk. Nor did defendants escalate the altercation by sending more patrons out to the fight. The two stabbing incidents happened within one or two minutes of each other. Because the fact pattern in the instant case is so drastically different from the facts in *Osborne* and *Shortall*, we will not follow their rationales.

## RESTATEMENT (SECOND) OF TORTS SECTION 344

Plaintiff also asserts that under section 344 of the Restatement (Second) of Torts, Aragon owed plaintiff a duty to protect him from the criminal attack of a third party.

■ Section 344 of the Restatement (Second) of Torts provides, in pertinent part, as follows:

> "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965).

While section 344 may be read to impose a broad duty on landowners, comment *f* further explains when this duty arises:

> "*f. Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has

no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts § 344, Comment *f* (1965).

See also *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 246 (2000).

■ In the instant case, notwithstanding Khalil's incident, the record is devoid of any evidence that shows that the attack on plaintiff was reasonably foreseeable. Even plaintiff testified that there were no disruptions or acts of violence at the concert throughout the evening, nor was there a warning of any sort prior to his attack. Both Khalil and plaintiff testified that the crowd at the concert involved all age groups and families, and the atmosphere was amicable. In addition, plaintiff adduced no evidence of prior incidents of violence that would give notice to Aragon of the probability of such assaults. Indeed, the record indicates that Aragon did not experience any similar incidents within the last five years. Under these circumstances, even viewing the pleadings, depositions, admissions, and affidavits strictly against the defendants and liberally in favor of the plaintiff, the stabbing was not reasonably foreseeable to the defendants. Thus, the trial court correctly granted defendants' motions for summary judgment.

## THEORIES RELATING TO LUNA SECURITY

Next, plaintiff argues that by hiring Luna Security to provide security service in the concert, Aragon owed plaintiff a duty to protect him from harm.

■ A landlord may be held liable for the criminal acts of third parties when it " 'voluntarily undertakes to provide security measures, but performs the undertaking negligently, if the negligence is the proximate cause of injury to the plaintiff.' [Citations.]" *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 217 (1988). Proximate cause can be established only when there is a "reasonable certainty" that the defendant's acts caused the injury. *Friedman v. Safe Security Services, Inc.*, 328 Ill. App. 3d 37, 48 (2002); see also *N.W. v. Amalgamated Trust & Savings Bank*, 196 Ill. App. 3d 1066, 1076 (1990). Further, the extent of the landlord's liability is strictly limited by the scope of the undertaking. *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill. App. 3d 490, 492 (1997). When a landlord undertakes security measures himself, he has a duty of reasonable care in that undertaking. *Phillips v. Chicago Housing Authority*, 89 Ill. 2d 122, 127 (1982).

When a landlord hires a security firm to provide security services, he may be held liable for negligent hiring. *Rowe*, 125 Ill. 2d at 217.

Here, a review of *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill. App. 3d 490 (1997), is instructive. In *Kolodziejzak*, the plaintiff's estate administrator sued the shopping mall management company for failure to protect plaintiff from a third party's fatal attack. The trial court entered judgment on a jury verdict for the plaintiff. The appellate court vacated the judgment, reasoning that even though the defendant had hired a security firm to provide security for the mall, the defendant did not reasonably foresee the occurrence of this violent crime. Prior to this fatal shooting, the mall had experienced retail thefts, "a report of an armed robbery that occurred in one of the tenant stores, as well as a strong-armed robbery." *Kolodziejzak*, 292 Ill. App. 3d at 497. The defendant also received past reports of a man with a gun, someone threatening the security guard with an oil stick, a youth being seen carrying a dagger, two juveniles fighting in the parking lot, and auto and bicycle thefts. The appellate court held that even though the defendant had knowledge of these incidents, the defendant could not have reasonably foreseen the fatal shooting of Kolodziejzak.

In this case, proximate cause cannot be established on the facts of this case. We note that the record is devoid of any evidence showing that any action or inaction on the part of the Aragon was the proximate cause of the plaintiff's injury. There is no allegation that the security guards on duty at the time plaintiff was stabbed were negligent in performing their duties. Furthermore, there was no evidence that Aragon negligently hired any Luna Security employees. None of Luna's security personnel was involved in the incident. Nothing in the record shows any unfulfilled duty by Aragon. As this court has stated, "[a] tavern operator is not an insurer of its patrons[ ]." *Davis v. Allhands*, 268 Ill. App. 3d 143, 152 (1994). Similarly, the Aragon should not be the guarantor of everybody's safety. Thus, plaintiff's argument has no merit, and a reversal of the trial court's summary judgment motion is unwarranted.

Next, plaintiff argues that had the defendants searched patrons as they entered the concert, Butt's knife would have been discovered. Failure to do so created a condition conducive to a foreseeable intervening criminal attack.

As stated earlier, Aragon and plaintiff had a business inviter/invitee relationship. However, a duty by itself will not be sufficient to prevail in an action for negligence. The plaintiff must also show the injury is reasonably foreseeable to the defendant.

In this case, a pat-down search of all concertgoers offered no

guarantee that the security personnel would have found Butt's knife. Whether a pat-down search of all concertgoers at the Aragon entrance could have prevented plaintiff's injury is at best speculation and conjecture. "It is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). Thus, defendants did not create a condition conducive to a foreseeable intervening criminal attack.

## PUBLIC POLICY

Finally, on appeal, plaintiff argues that the trial court, as a matter of public policy, should have imposed a burden on the defendants to protect the plaintiff from a third party's criminal attack.

As this court stated in *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill. App. 3d 490, "foreseeability alone will not result in the imposition of a duty. [Citation.] The magnitude of the burden to guard against it and the consequences of placing the burden on defendant must also be considered." *Kolodziejzak*, 292 Ill. App. 3d at 492.

Applying this holding to the instant case, the cost would be too burdensome to impose a duty on the Aragon to protect third parties from all criminal attacks. With about 1,000 concertgoers inside of a large building, how many guards would the Aragon have to hire to protect against any and all potential criminal acts that could occur in the common area? Such a requirement would place too onerous an economic burden on the Aragon. We therefore reject plaintiff's public policy argument.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

CAMPBELL, P.J., concurs.

JUSTICE HARTIGAN, dissenting:

The majority holds that defendants did not owe a duty to plaintiff because the stabbing of plaintiff was not reasonably foreseeable. The majority concludes "notwithstanding Khalil's incident, [*i.e.*, the fact that he was punched in the face and dragged through the lobby, in the presence of security while yelling for help,] the record is devoid of any evidence that shows that the attack on plaintiff was reasonably foreseeable." 343 Ill. App. 3d at 89. The majority's conclusion seems to rest on a lack of evidence that defendants had knowledge of the Khalil incident thereby tacitly conceding that had defendants been aware of the attack on Khalil its holding today would be different.

However, under both section 344 of the Restatement (Second) of Torts, and under Comment *f*, cited by the majority, actual knowledge is not required to impose liability. Rather, the proper inquiry is whether the defendants have "reason to discover that the acts of third persons are occurring or about to occur." Here, the foreseeability of the criminal act perpetrated on plaintiff should be judged on the basis of what defendants should have discovered given the evidence presented. Viewing the evidence in a light most favorable to plaintiff, the evidence establishes that Khalil was punched in the face while still in the lobby, which was "not too crowded," and yelled for help while being dragged out of the theatre. Luna Security had two guards positioned inside the second set of doors on the main floor and the Aragon had six security guards on the stairs of the lobby, wearing orange vests. Certainly, a screaming man being dragged through the lobby would give defendants "reason to know" of a likelihood of conduct on the part of Butt which would endanger Khalil and others leaving the theatre. Moreover, Aragon hired additional security for the event. This leads one to conclude that Aragon had a "reason to know" that additional security was necessary and that its own security was inadequate to supply ample protection for this event. And yet, even with the additional security, Aragon failed to place guards in the vestibule and additional guard in the lobby.

Under *Shortall*, a criminal act becomes foreseeable when a serious altercation has already begun. *Shortall*, 283 Ill. App. 3d at 443. By limiting the application of *Shortall* to instances where defendants are actually aware of the altercation, the majority too easily allows a defendant to escape liability by simply stating "I did not see anything." Here, Aragon and Luna Security are escaping liability because they did not see anything. But why did they not see anything? Luna Security claims it was not instructed to place guards in the vestibule. Had guards been placed in the vestibule, they would have witnessed Khalil being dragged out and attacked. Then, under the majority's reasoning, defendants would have been liable. As a licensed facility, Aragon should not be allowed to pick and choose the areas of the club it wishes to protect and then avoid liability for injury to its patrons by turning a blind eye.

The majority asks, "With about 1,000 concertgoers inside of a large building, how many guards would the Aragon have to hire to protect against any and all potential criminal acts that could occur in the common area?" 343 Ill. App. 3d at 91. There were guards in the main hall, two guards in the lobby, and guards by the stairs and fire exits; there were no guards in the vestibule, a common area. Clearly, there should have been guards in the vestibule as well as additional

guards in the lobby. Contrary to the majority's belief, placing additional guards in the vestibule, *i.e.*, the area between the glass entry doors and the wooden doors opening to the lobby, would not "place too onerous an economic burden on the Aragon." 343 Ill. App. 3d at 91. Rather, it more likely would have prevented the attack on both Khalil and plaintiff. For these reasons, I respectfully dissent.