2019 IL App (1st) 181641
No. 1-18-1641

FIRST DIVISION
October 7, 2019

| | |
|---|---|
| NATALIE WITCHER, as Special Administrator for the Estate of Toney Adewoye, | ) Appeal from the Circuit Court of ) Cook County ) |
| Plaintiff-Appellant, | ) ) |
| v. | ) No. 16 L 2919 ) |
| 1104 MADISON ST. RESTAURANT d/b/a Plush Chicago, | ) ) ) |
| Defendant-Appellee. | ) Honorable Patricia O'Brien Sheahan ) Judge Presiding |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court with opinion. Justices Hyman and Pierce concurred in the judgment and opinion.

OPINION

¶ 1    Toney Adewoye was patronizing Plush, a restaurant and lounge in Chicago, when he was stabbed in the neck and killed. The special administrator of Adewoye's estate, plaintiff Natalie Witcher, brought this case for wrongful death against defendant 1104 Madison St. Restaurant, the company that operated Plush. Witcher contends that 1104 Madison failed to provide proper security at the restaurant in order to prevent Adewoye's death.

¶ 2    The trial court entered summary judgment in favor of 1104 Madison. The trial court found that the murder was not reasonably foreseeable so that 1104 Madison could not be held to have had a legal duty to prevent the murder. Witcher appeals, and we affirm.

¶ 3                              BACKGROUND

¶ 4    On October 12, 2011, a Wednesday, Toney Adewoye visited Plush restaurant and lounge located at 1104 W. Madison Street in Chicago. Adewoye was at the establishment with someone he referred to as his wife. When Adewoye was getting ready to leave the establishment, he began to speak with a man who was unknown to Plush's owner and the restaurant's other patrons. The encounter seemed cordial until, suddenly, the unknown man appeared to slap Adewoye's face. The witnesses did not see any weapon. The unknown man quickly left the restaurant and Adewoye exited too. Witnesses found Adewoye outside of Plush soon afterwards and he was bleeding heavily from his neck. The whole incident happened in a matter of seconds.

¶ 5    The unknown man entered a vehicle that was standing across the street from Plush and quickly left. Plush's owner called 911, and a doctor that was patronizing the restaurant attended to Adewoye. Adewoye bled heavily from the neck and died from his injuries. The man who stabbed Adewoye was never identified and never apprehended.

¶ 6    Plush had experienced some disturbances in the years preceding the stabbing. There had been public complaints made about Plush by members of the community between 2009 and 2011. William Kleronomos, Plush's owner, began to employ security on Friday and Saturday nights. Kleronomos testified in a deposition that he employed security on weekends but not on weeknights because of the increased volume of customers on weekends. He testified that approximately 30 people were present on the night of Adewoye's murder whereas about 80 to 100 people would be present on weekend nights.

¶ 7    In support of her theory of liability in this case, plaintiff produced a Chicago Police Department Incident Check Report which documented the incidents at 1104 W. Madison St. from January 2006 to October 2011. In the five and a half years preceding Adewoye's murder, there had been calls to the police to report 11 battery incidents, one assault, five thefts, and three

motor vehicle thefts that corresponded to the address where Plush was located. Of those 20 incidents that occurred at 1104 W. Madison in the five years before the murder, one was on a Wednesday (the day of the week that the murder occurred), 13 were on other weeknights, and six were on a Friday or Saturday.

¶ 8    Plaintiff filed this case on the basis that Plush is liable for Adewoye's death because it failed to provide adequate security to prevent his death. The parties conducted discovery, including taking the depositions of Plush's owner Kleronomos and another eyewitness, Jeffrey Timms, both of whom were present at Plush on October 12, 2011 and witnessed the murder. Plaintiff disclosed two expert witnesses, but the trial court found the expert witness disclosures to be deficient. The trial court gave plaintiff leave to amend the expert witness disclosures, but she never did so.

¶ 9    Defendant filed a motion for summary judgment arguing that it did not have a legal duty to prevent Adewoye from being murdered in its establishment under the circumstances. The motion for summary judgment was fully briefed and the trial court conducted a hearing on the motion. The trial court's ruling, memorialized in a bystander's report agreed upon by the parties, was that defendant is not liable because "there was no testimony or other evidence that the altercation was even remotely foreseeable." The trial court found that the reports of other disturbances were insufficient to give rise to a duty on defendant's part to protect Adewoye from the assailant. The trial court also reiterated its finding that plaintiff's expert disclosures were deficient, but stated that even if the court did consider the experts' affidavits, defendant would still not have owed a duty of care to Adewoye in this case.

¶ 10                                  ANALYSIS

¶ 11    On appeal, plaintiff argues that the trial court erred when it entered summary judgment in

defendant's favor. Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Fox*, 2016 IL App (1st) 141984, ¶ 12. We review a trial court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 12     The issue in this case concerns a restaurant owner's duty to protect its patrons from criminal acts committed by third parties. As a general rule, there is no duty imposed on landowners to protect others from criminal attacks by third persons on their property. *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 92 (1992). However, the owner of a restaurant or bar might have a duty to protect its patrons against criminal attacks on the property if circumstances such as prior incidents give the owner knowledge of the danger facing the patrons. *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 55; *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 526 (1995). In determining whether such a duty exists in a given case, the question is whether the criminal activity was reasonably foreseeable such that the business should be held to have a duty to protect its patrons from such activity. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 243 (2000).

¶ 13     Illinois courts have looked to the Restatement of Torts for guidance in determining the circumstances in which a business has a duty to protect its patrons from a third party's criminal acts. *Id*. at 243-44. The Restatement explains that business owners might have a duty to protect customers when the owners have knowledge of the dangers posed to their patrons.

"A possessor of land who holds it open to the public for entry for his

business purposes is subject to liability to members of the public while they are

upon the land for such a purpose, for physical harm caused by the accidental,

negligent, or intentionally harmful acts of third persons or animals, and by the

failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or

otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965)

(West 2016).

Before a duty to protect will be imposed on a possessor of land, the court must also consider (1)

whether the criminal attack was reasonably foreseeable, (2) the likelihood of the injury, (3) the

magnitude of the burden to guard against the injury, and (4) the consequences of placing that

burden upon the possessor. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37 (2006).

¶ 14    In this case, the record fails to establish that the crime at issue was in any way

foreseeable. Instead, the crime against Adewoye was a sudden, unforeseeable, and targeted

murder. The assailant in this case, a still-unknown man, came into the lounge, did not order a

drink, and spoke directly with Adewoye. The man then stabbed Adewoye in the neck and left the

premises. There is no evidence in the record to suggest that the murder related to anything that

happened at the restaurant nor is there any evidence that the murder occurred because of

Adewoye's presence at the restaurant. There is similarly no evidence in the record that any event

even remotely similar to this crime had ever occurred at Plush before. As a result, the crime was

not reasonably foreseeable and defendant had no duty to protect plaintiff's decedent from the

criminal act of the unknown third party.

¶ 15    A restaurant owner is not an insurer of its patrons' safety. See *Marshall*, 222 Ill. 2d 422, 444 (2006) (quoting Restatement (Second) of Torts § 344 cmt. f (West 2016)). To establish that a restaurant has a duty to protect its customers from criminal acts of third parties, the criminal act at issue "must have resulted from the same risk as was present in the prior incidents of criminal activity." *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 527 (1995). The witnesses in this case testified that they had never seen anyone at Plush with a weapon. There were not even fights inside the restaurant. On the night in question, the eyewitnesses testified that the crowd was "mature and jovial." Plaintiff points to nothing that happened previously at the restaurant that specifically or generally would have put defendant on notice that this crime or any similar crime was likely to occur. See *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill. App. 3d 490, 496-97. From reviewing the record, it is apparent that this crime was an aberration that neither the restaurant owner nor its patrons could have ever suspected.

¶ 16    To support her theory of liability, plaintiff introduced incident reports that documented the reported criminal incidents at 1104 W. Madison St. from January 2006 to October 2011. In the five and a half years preceding Adewoye's murder, there had been 20 documented calls to the police that corresponded to the address where Plush was located. However, none of the documented incidents share the characteristics of the murder at issue so as to make this murder reasonably foreseeable. As we have explained on other occasions, generalized allegations of prior crimes will not suffice to establish a duty on the part of business to protect patrons. *Popp*, 244 Ill. App. 3d at 93.

¶ 17    The evidence plaintiff submitted in an effort to prevent the entry of summary judgment against her is the exact type of evidence we have warned would be insufficient to demonstrate the existence of a duty on the part of business to protect patrons. The incident report is a mere

printout of criminal reports made at Plush's address for the five and a half years before the murder. The incident report is the very definition of "generalized allegations of prior crimes." See *id*. The incident report does not even state that the entries relate to Plush, simply listing an address. That address also houses four apartment units. The incident report does not state who made the calls. The incident report does not detail the disposition of the reported incident, *i.e.* was the report unfounded, were charges filed, *et cetera*. The descriptions of the reported crimes in the incident report contain one-word descriptions, providing no context to illuminate plaintiff's theory of a dangerous establishment where all matters of crime should have been foreseen.

¶ 18    Plaintiff points to the Restatement which outlines that, if the character of the business or past experience is such that the business should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, the business may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection (quoting *Sameer v. Butt*, 343 Ill. App. 3d 78, 89 (2003) (quoting Restatement (Second) of Torts § 344, cmt. f (1965)). However, the disturbances at Plush's address were garden variety crimes correlated to nightlife activity: leaving trash around neighboring homes, fights outside the establishment, noise disturbances, and the like. While there were a few instances of assault and battery, none of the prior incidents were of the character to have made the intentional and targeted stabbing of a patron foreseeable.

¶ 19    Even though there had been "crimes" at or near Plush in the years prior to the murder, those incidents were not of the same character of the crime at issue and do not render the crime in this case to be foreseeable. See *Kolodziejzak*, 292 Ill. App. 3d at 496-97. Even if Plush should have been able to foresee "crime" occurring generally, there is no evidence that it should have

7

foreseen *this crime* occurring. See *Ignarski*, 271 Ill. App. 3d at 527 (to establish that a restaurant has a duty to protect customer from the criminal acts of third parties by virtue of the business's knowledge of prior criminal incidents, the injury must have resulted from the "same risk" that was present in prior incidents of criminal activity). Plaintiff points to nothing from the past that could have given defendant notice of the risk that materialized when Adewoye was killed.

¶ 20 Plaintiff suggests that because Plush had security on Friday and Saturday nights, it knew of the risks of crime and, therefore, should have had security on Wednesdays too. Of the 20 incidents that occurred at 1104 W. Madison in the five years before the murder, just one was on a Wednesday. Plush's owner testified that he hired security for Fridays and Saturdays because the crowds were much larger. On the night of the murder, the eyewitnesses estimated that there were approximately 30 people in the restaurant, while on weekends the crowd was at least three times larger. Kleronomos testified at his deposition that, during the week, there would sometimes be just two patrons in the restaurant, and that the restaurant on weeknights had the same kind of atmosphere as the room in which the deposition was being held. The trial court observed, based on the evidence in the record, Wednesday nights at Plush were "historically calm," and Kleronomos believed the weeknight crowds did not require security.

¶ 21 Like in *Sameer* where the atmosphere was "amicable," the atmosphere at Plush before the murder was "jovial." See *Sameer*, 343 Ill. App. 3d at 89. The eyewitnesses testified that even the conversation between the assailant and Adewoye seemed cordial as they saw no hostility or indication that the parties intended to fight before the stabbing. And, being that there was only one prior reported incident that occurred on a Wednesday, and it was more than five years earlier, there is nothing in the record to suggest that Plush should have foreseen an incident like this one occurring on the night in question.

¶ 22    In addition, there is nothing in the record to suggest that Plush needed to have security at all times. The evidence submitted by plaintiff suggests that there were approximately four incidents a year over a five year period that required police attention at Plush's address. See *Davis v. Allhands*, 268 Ill. App. 3d 143, 152 (1994) (even though a bar had four fights in 90 days, that fact was not sufficient to impose a duty on the bar to employ additional security personnel). Both this case and *Sameer* involved stabbings that the owners of the establishments could not have foreseen and had no legal duty to prevent. See *Sameer*, 343 Ill. App. 3d at 89. For us to say that Plush should have prevented the attack in this case would be to say that just about every bar and restaurant should have round-the-clock security lest they be liable for any unexpected targeted killing on their premises. Illinois law does not support such a result.

¶ 23    Even in her brief before this court, plaintiff generally states that there was "sufficient evidence to give a reasonable restaurant or bar owner notice that he should reasonably anticipate careless or criminal conduct on the part of others," but she fails to address how dissimilar the criminal act was in this case as opposed to any of the previous disturbances at Plush. Plaintiff also states that "Plush should have reasonably anticipated criminal conduct on the part of others," but again misses the mark by failing to explain how defendant could have anticipated the criminal act *in this case* or any crime similar to it. Plaintiff seems to suggest that defendant should have foreseen any and all criminal acts at Plush and should be liable for any manifestation of crime.

¶ 24    All the case law that plaintiff relies upon demonstrates the general legal premise that, when there are *prior similar crimes*, a defendant has a duty to take precautions against their recurrence. But no prior similar crimes exist in this case that could have reasonably put defendant on notice that it needed to protect its patrons from the actions giving rise to plaintiff's

decedent's death. Accordingly, defendant did not owe plaintiff's decedent the duty of care on which plaintiff's claim is based.

¶ 25      Plaintiff argues that even we do not find that there was a duty as a matter of law, we should find that there was at least a question of fact as to whether defendant owed Adewoye the relevant duty of care. Plaintiff maintains that "reasonable persons could differ on whether the prior criminal activity at Plush created a duty for it to take reasonable precautions to ensure its patrons' safety." Generally, the question of the whether a duty exists in a negligence action is a question of law. *Sameer*, 343 Ill. App. 3d at 85. While plaintiff cites no authority in which a business's duty to protect patrons was held to be a question of fact, we have previously observed that it is at least possible that "[w]hether or not the defendants could have foreseen or reasonably anticipated [the wrongful] conduct and the resulting injury is a factual question." *Crohn v. Congregation B'Nai Zion*, 22 Ill. App. 3d 625, 631 (1974).

¶ 26      In this case, however, the record evidence is insufficient to create a triable question on foreseeability. In its response brief submitted in opposition to defendant's motion for summary judgment, plaintiff relied upon the expert opinion of S. Ronald Hauri. Plaintiff cites Hauri's expert opinion in his opening brief as support for her position that defendant owed Adewoye a duty of care and that it should have provided security on the night Adewoye was killed. However, and as plaintiff tacitly concedes in her reply brief, Mr. Hauri's expert opinion was improperly disclosed and was stricken and not considered by the trial court. Plaintiff does not appeal the trial court's decision to disregard Hauri's opinion, so any claim that the trial court's ruling on this matter was improper is forfeited. *Underwood v. City of Chicago*, 2017 IL App (1st) 162356, ¶ 55; Ill. S. Ct. R. 341(h)(7)(eff. Jan. 1, 2016) (points not argued on appeal are forfeited). Plaintiff was also given leave to amend her expert disclosures, but she did not do

so and instead abandoned any proffer of expert evidence.

¶ 27    When Hauri's expert opinion is not considered, the other evidence in the case is insufficient to create any question of fact regarding whether defendant owed Adewoye the claimed duty. As discussed above, there is no evidence that the crime was reasonably foreseeable because there is no evidence in the record that any event even remotely similar to this crime had ever occurred at Plush before. The evidence of general disturbances submitted by way of the incident list is insufficient to create a triable question where it consists of general, unsubstantiated reports of "crimes." No matter how favorably we read the incident list in plaintiff's favor, there is nothing in the report that could have led Plush's owner to foresee that a targeted stabbing of one of its patrons was likely to occur. Defendant cannot be charged with having committed a wrong for failing to take steps to prevent this attack which it cannot be fairly held to have anticipated in any way.

¶ 28    To support her theory of liability, plaintiff relies heavily on a few decisions that deal with liability for public institutions failing to protect their patrons. See *Neering v. Illinois Central Railroad Co.*, 383 Ill. 366 (1943); *Haynes v. Chicago Transit Authority*, 59 Ill. App. 3d 997 (1978). The cases are readily distinguishable from this case and were decided more than 40 years ago. The evidence in this case did not show that Plush was a gathering spot for criminals. No evidence was submitted to show that any of the potentially criminal incidents near Plush resulted in bodily injury. Plaintiff presented no evidence of previous crimes that were factually similar to the subject crime. Instead, the more recently decided case law cited and discussed above (*Sameer*, 343 Ill. App. 3d at 85, *Ignarski*, 271 Ill. App. 3d at 527, and *Kolodziejzak*, 292 Ill. App. 3d at 496-97) is the legally and factually similar authority that provides the correct analytical framework for deciding this case. The trial court correctly entered a judgment of no liability in

11

defendant's favor.

¶ 29                          CONCLUSION

¶ 30     Accordingly, we affirm.

¶ 31     Affirmed.