In the

# United States Court of Appeals

### For the Seventh Circuit

————————————

No. 24-1886

VONZELL SCOTT, SR.,

*Plaintiff-Appellant,*

*v.*

WENDY'S PROPERTIES, LLC,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-06829 — **Manish S. Shah**, *Judge.*

————————————

ARGUED NOVEMBER 6, 2024 — MARCH 25, 2025

————————————

Before BRENNAN, KOLAR, and MALDONADO, *Circuit Judges.*

KOLAR, *Circuit Judge.* Vonzell Scott fell victim to a horren-dous shooting while waiting in his car at a Wendy's drive-thru line. He then sued the fast-food chain, claiming its negli-gence in failing to provide overnight security guards caused his injury. The district court granted summary judgment for Wendy's. Our sympathies may lie with Mr. Scott, but because this extreme, isolated, and unprovoked display of violence was not reasonably foreseeable, we affirm.

## I.  Background

At around 3:00 am on December 31, 2018, Vonzell Scott went to a Wendy's located at 242 West Garfield Boulevard in Chicago. Scott entered the drive-thru, which remained open until 4:00 am (the restaurant closed its indoor dining room at 10:00 pm). Despite the late hour, the drive-thru was crowded. Scott reported having a brief altercation with another driver who attempted to cut him off; that interaction ended rapidly and peacefully. Scott ordered his food and waited.

At 3:12 am, a white SUV slowly drove through the back of the Wendy's parking lot. The SUV then turned onto a side-street. Scott, still waiting for his food, was positioned between cars in front of and behind him. Around one minute later, two individuals armed with pistols entered the parking lot from the sidestreet. They ran up to Scott's car, surrounded his vehicle, and opened fire. They shot repeatedly over the course of five seconds. Then, they fled. The entire incident, from the shooters entering the parking lot to leaving, lasted around 20 seconds. Although Scott was seriously injured, he survived the shooting.

The Wendy's location at issue is one of 305 restaurants that Wendy's owns, rather than franchises. For company-owned restaurants, Wendy's assesses the needs and risks of each restaurant, classifies its risk level, and generates a security plan. Nationwide, less than 5 percent of Wendy's-owned restaurants employ any security personnel, and less than 2 percent have armed guards. The 242 West Garfield location is part of that 2 percent.

In August 2018, four months before the shooting, the West Garfield Wendy's switched its security provider in part

because its previous contractor was not consistently providing armed guards. At first, the restaurant had the new provider, Metro One, staff an armed guard from 12:30 pm until 10:00 pm. It expanded Metro One's duty time to the entire period the dining room was open because "vagrants" were coming into the restaurant in the morning. Security guards never worked until the 4:00 am close.

Nonjae Thompson was a Wendy's employee beginning in April 2018. At her deposition, she testified that this Wendy's was in a dangerous neighborhood, and that prior to Scott's assault she witnessed shootings and carjackings from the drive-thru window while working the overnight shift. These took place across the street at a gas station, never on Wendy's property. Wendy's trained its employees to wear headsets whenever they left the building, for tasks like taking out the trash, so they could communicate if they were attacked. Based on what she had seen, Thompson believed Wendy's should have kept security guards on the premises during the overnight shift. She did not keep this to herself; she told her manager that she and other employees thought Wendy's needed to keep security guards overnight to protect employees.

Scott also submitted that the Chicago Office of Emergency Management (OEM) had recorded 29 calls for service at the Wendy's between June 16, 2016 and December 5, 2018. Scott's expert, Ronald Hauri, reviewed the documents and opined that the calls were related to guns, disturbances, batteries and EMS requests. None of the calls involved shootings.

Hauri and Wendy's internal Security Manager, Rocco Prate, both testified that the presence of security guards is a deterrent for ongoing criminal activity. Prate also testified that the guards' duties were to patrol both the inside and

outside of the restaurant and take direction from the managers about where they should monitor and patrol.

In his lawsuit for negligence, Scott argued Wendy's breached its duty to keep the premises reasonably safe and that the breach caused his injury.[1] After discovery closed, Wendy's moved for summary judgment arguing that (1) it did not owe a duty to protect Scott from this shooting and, in the alternative (2) Wendy's did not cause Scott's injury because the shooting was unforeseeable and additional security would not have prevented it.

The district court granted summary judgment for Wendy's. Although Wendy's owed a duty to protect Scott from "intentional third-party assault," the district court found this particular shooting was so aberrant that Wendy's failure to provide security guards did not proximately cause Scott's injury. Scott timely appealed.

## II.  Analysis

We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to Scott, the non-moving party. *Anderson v. Street*, 104 F.4th 646, 651 (7th Cir. 2024). When there is any "genuine dispute of material fact," summary judgment cannot stand. Fed. R. Civ. P. 56(a).

Because our jurisdiction is based on diversity of citizenship, we apply Illinois's substantive negligence law. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010). "The elements of a negligence cause of action are [1] a duty owed

---

[1] Scott sued in Illinois state court and Wendy's removed the action to the Northern District of Illinois. Scott and Wendy's stand in diversity and Scott seeks over $75,000 in damages. 28 U.S.C. § 1332.

by the defendant to the plaintiff, [2] a breach of that duty, and [3] an injury [4] proximately caused by the breach." *Johnson v. Armstrong*, 2022 IL 127942, ¶ 51 (quotation and citation omitted). Only duty and proximate cause are at issue on appeal. We must affirm if either duty or causation are lacking.

Proximate cause comprises two sub-elements: "cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Lee v. Chicago Transit Auth.*, 152 Ill. 2d 432, 455 (1992). Determining causation "is ordinarily a question of fact" for a jury, but "it is well settled that it may be determined as a matter of law" when the undisputed evidence forecloses a plaintiff's recovery. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257–258 (2004).

The "cause in fact" analysis presents a simple question. Would the injury "have occurred absent the defendant's conduct[?]" *Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (2004). This means either (1) "but for" the defendant's conduct the injury would not have occurred or (2) the defendant's conduct "was a material element and a substantial factor" in causing the injury. *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 23. Only one of these tests need be satisfied to prove cause in fact. *See Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 343 (2010) (plaintiff "sought to prove causation through the but-for test."); *Thacker v. UNR Indus., Inc.*, 151 Ill. 2d 343, 355 (1992) (plaintiff "sought to prove causation through the substantial factor test.").

The "legal cause" analysis demands more nuance. It is "largely a question of foreseeability" that answers if "the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct." *Abrams*, 211 Ill. 2d at 258 (quoting

*First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 260 (1999) (emphasis in original)). In a case where a third-party tortfeasor plays a part in causing the injury, we must ask whether "the intervening efficient cause [w]as a natural and probable result of the [defendant]'s own negligence." *Galman*, 188 Ill. 2d at 257. This falls under the "legal cause" prong of the analysis. *Id.* at 258. Ultimately, the "question is one of policy" that draws an outer limit of liability for the consequences of some acts that are the "cause[s] in fact" of injury, but utterly unforeseeable to the reasonable person. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004).

The district court believed there was a genuine dispute on the "cause in fact" prong because both experts testified that security guards stationed in parking lots deter criminal activity, potentially including this shooting. Still, it found Wendy's could not have reasonably foreseen this attack as a matter of law. Assuming (without deciding) the district court was correct on the "cause in fact" question, we turn to "legal cause."

Many courts have considered when a plaintiff may prevail, as a matter of law, against a defendant after suffering injuries at the hands of a third-party on the defendant's premises. *See, e.g.*, *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 244–45 (2000) (discussing trend in 1980s and 90s of courts recognizing negligence claims against business owners for crimes committed by third-parties on their land). Indeed, two of our cases helpfully contrast when a third-party criminal act is "foreseeable" under Illinois law and when it is not.

If the defendant business affirmatively knows that some of its patrons plan to carry out an assault, or have a propensity for fighting, the resulting harm is foreseeable. *Reynolds*, 623 F.3d at 1150–51 (discussing *Haupt v. Sharkey*, 358 Ill. App. 3d

212 (2005)); *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 148–49 (2000). But when the type of crimes or past harms known to occur do not have a remote resemblance to plaintiff's tort, it is not foreseeable. *Figueroa v. Evangelical Covenant Church*, 879 F.2d 1427, 1438–39 (7th Cir. 1989).

In *Figueroa*, the plaintiff was abducted from a parking lot where the defendant provided security. *Id.* at 1429–30. We summarized Illinois precedent that evidence of prior similar violence or specific knowledge that the assailant was a risk are often necessary to establish foreseeability. *Id.* at 1438 (collecting cases). The abduction and assault were not foreseeable, we held, because "[t]he most serious alleged incidents occurring before the time of the attack on [plaintiff] involved high school students 'harassing' female students around the bridge area of campus." *Id.* at 1439. We also discounted "[v]ague allegations of 'crimes against persons' at unspecified times and in unspecified places about which witnesses can remember no details" as adequate to make plaintiff's abduction foreseeable. *Id.* In short, the abduction and assault was not an "injury which naturally flow[ed] as a reasonably probable and foreseeable consequence" of defendant's failure to provide security because there was no "evidence to suggest that an attack remotely resembling" plaintiff's "had occurred anywhere" on defendant's property before. *Id.* at 1438–39 (internal quotation and citation omitted).

Before proceeding further, we note at least one Illinois court has found the intersection between duty and proximate cause a "less than perfectly lucid or consistent" feature of Illinois precedent. *Colonial Inn Motor Lodge, Inc., for Use & Benefit of Cincinnati Ins. Co. v. Gay*, 288 Ill. App. 3d 32, 41 (1997). The "foreseeability" of an injury is integral to both the duty and

legal cause elements of negligence claims. The district court admirably attempted to disentangle how "foreseeability" analysis differs for each inquiry. *Scott v. Wendy's Properties, LLC*, No. 20 CV 6829, 2024 WL 1768630, at *4 (N.D. Ill. Apr. 24, 2024) (citing *Colonial Inn*, 288 Ill. App. 3d at 41). Yet despite *Colonial Inn*'s proposed analytical framework—adopted by the district court—Illinois Supreme Court decisions at times suggest it is permissible to blend "foreseeability" across duty and legal cause. *See, e.g.*, *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 227–29 (1988) (same foreseeability analysis supported finding defendant owed a duty to plaintiffs and that its actions were a legal cause of plaintiffs' injuries); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 442 (2006) (relying on a California Supreme Court case as authority for the legal test for duty, which in turn characterized the overlap between duty and proximate cause as "present[ing] the same issue in different guises." (quoting *Bigbee v. Pacific Tel. & Tel. Co.*, 34 Cal. 3d 49, 56 (1982))). We do not resolve this issue of state law but note that we find some cases discussing "foreseeability" in the duty context instructive in our legal cause evaluation. At root, they both ask whether a reasonable person would have foreseen a plaintiff's injury.

"[W]hat is reasonably foreseeable is a context-dependent inquiry." *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 71. As we explained in *Figueroa* and Illinois courts have repeatedly recognized, in the context of third-party criminal acts on business premises, the injury is only reasonably foreseeable when it results from "the same risk" presented by past occurrences. *Rowe*, 125 Ill. 2d at 227; *Duncavage v. Allen*, 147 Ill. App. 3d 88, 96–97 (1986) (storage of a ladder near plaintiff's apartment window and known previous burglary using it as a means of access rendered assault and

murder of plaintiff foreseeable); *Witcher v. 1104 Madison St. Restaurant*, 2019 IL App (1st) 181641, ¶ 19 (past incidents that "were not of the same character of the crime at issue" did not make specific crime against plaintiff foreseeable).

Defining whether the past incidents pose the "same risk" for legal cause demands some precision. Take *Galman*, for example. The defendant parked his truck illegally, 41 feet from an intersection. *Galman*, 188 Ill. 2d at 254. The plaintiff, a pedestrian, chose not to use the crosswalk but walked down the block and attempted to cross the street in front of the truck. *Id.* at 254–55. Tragically, she was hit by a car and killed. *Id.* The Illinois Supreme Court rejected plaintiff's claim against the truck driver on legal cause grounds. *Id.* at 260. To answer whether "the injury [was] of a type" that was a reasonably "*likely result*" of defendant's conduct, the context-specific question was whether "it was reasonably foreseeable that violating a 'no parking' sign at mid-block would likely result in a pedestrian's ignoring a marked crosswalk at the corner, walking to mid-block, and attempting to cross a designated truck route blindly and in clear violation of the law." *Id.* at 260–61 (emphasis in original). Thus, Illinois law demands a tailored question for legal cause. *See, e.g.*, *Abrams*, 211 Ill. 2d at 261–62 (concluding it was not reasonably foreseeable that "a refusal to send an ambulance when labor pains are 10 minutes apart would likely result in plaintiff's driver running a red light at the same time that a substance-impaired driver was speeding through the intersection on a suspended license").

The factual context convinces us that Scott's injury was not reasonably foreseeable as a matter of law. The tragedy of the assault     Scott     suffered—brazen,     unprovoked,     and

extraordinary in its violence—is precisely why Wendy's could not have reasonably foreseen its occurrence. We do not hold that any criminal attack on the Wendy's premises was unforeseeable. The prior 911 calls, surrounding violence in the neighborhood, and Wendy's decision to staff security clearly show a foreseeable risk of injury due to some type of crime.

But for liability to attach here the harm must flow from something far more similar to past events. The undisputed video evidence depicts a 20-second period in which two men hurried to Scott's car, unloaded multiple rounds into his vehicle from multiple angles, and fled into the night. This was not a robbery or burglary gone bad, or an altercation that developed on the premises. *See Kolodziejzak v. Melvin Simon & Assocs.*, 292 Ill. App. 3d 490, 497 (1997) (gang crime not foreseeable despite prior armed robberies on premises because no previous crimes indicated "likelihood that a gang member would enter [defendant]'s premises with a gun and shoot an innocent person."). None of the prior 911 calls at Wendy's involved shootings of any kind.

Thompson's testimony of witnessing prior nearby shootings and carjackings while working the drive-thru window is Scott's most compelling evidence. But even taken in the most favorable light, it does not generate a genuine dispute on foreseeability. First, these alleged crimes did not occur on Wendy's property. *Petrauskas v. Wexenthaller Realty Mgmt., Inc.*, 186 Ill. App. 3d 820, 827 (1989) (shooting across the street did not put landlord on notice of crime on its property). Most importantly, Thompson's attestation of shootings across the street and at the gas station do not establish the "same risk" as the specific type of violence here—an extreme, isolated,

and unprovoked act without apparent design or motive beyond a quick killing. Armed robberies stem from property motives, clearly absent here. And the unspecified "shootings" are also of limited relevance. That term encompasses too broad a category of potential conduct—any act involving the discharge of a firearm—to answer whether this type of attack was foreseeable as a legal cause. *See Abrams*, 211 Ill. 2d at 261–62.

Nothing about the condition of Wendy's premises or nature of the business increased the foreseeability of the crime Scott endured. *Hills*, 195 Ill. 2d at 245–46. This was not a dilapidated, unlit parking lot inviting criminal activity. *Duncavage*, 147 Ill. App. 3d at 97. In other words, no evidence before us links this shooting to the Wendy's location—the apparently targeted nature of the shooting suggests this was just as likely to occur off premises. *See Petrauskas*, 186 Ill. App. 3d at 827. That stands in contrast to, say, a fight or shooting breaking out after a protracted period of drinking at the defendant's establishment. *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶¶ 69–73 (discussing foreseeability of assaults when tavern owner knew involved parties were getting worked up). As a fast-service restaurant, Wendy's could not foresee two men entering its property with the sole intention of shooting the occupants of Scott's vehicle.

Likewise, this is not a case of Wendy's failing to protect an employee, nor was Scott's harm caused by an act of a Wendy's employee. *See Adames v. Sheahan*, 233 Ill. 2d 276, 298–99 (2009) (discussing a defendant's vicarious liability for its employee's tortious actions). In either of these circumstances, we would have a different case, demanding a different analysis.

Our decision accords with the Illinois precedent that unprovoked, extreme acts of violence are usually unpredictable as a matter of law. *See Witcher*, 2019 IL App (1st) 181641, ¶¶ 15–18 (even "a few [prior] instances of assault and battery" did not make "the intentional and targeted stabbing of a patron foreseeable"); *cf. Rowe*, 125 Ill. 2d at 227 (prior burglaries put defendants on notice of plaintiffs' assault and murder resulting from burglary because burglary "involves a high risk of personal injury or death if the intruder is confronted."). Two men entering the Wendy's parking lot, "pulling out a gun and opening fire, is so extreme that it is difficult to conceive of how [Wendy's] could have guarded against it." *Costa v. Gleason*, 256 Ill. App. 3d 150, 152 (1993) (not foreseeable that assailant would barge into tavern and begin shooting).[2] Thus, confined to these facts, Scott's injury was not foreseeable.

### III.  Conclusion

The district court's grant of summary judgment is **AFFIRMED**.

---

[2] Because we conclude that the district court's basis for granting summary judgment was not in error, we need not, and do not, decide whether Wendy's had a duty to protect Scott from his injury. *Doe v. McAleenan*, 929 F.3d 478, 489 n.25 (7th Cir. 2019).